# EXHIBIT A

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 2 of 11 PageID #: 5

STATE OF RHODE ISLAND             SUPERIOR COURT
PROVIDENCE, SC.

| | |
|---|---|
| WAYNE ARRUDA<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Civil Action No. |
| RHODE ISLAND MEDICAL IMAGING, INC.<br>and Dr. John A. Pezzullo III,<br>Individually and in his Official Capacity,<br>    Defendants | )<br>)    JURY TRIAL DEMANDED<br>)<br>) |

## COMPLAINT

Wayne Arruda ("Mr. Arruda"), by and through counsel files this Civil Complaint against Rhode Island Medical Imaging, Inc. ("RIMI") and Dr. John A. Pezzullo III ("Dr. Pezzullo") based on violations of the anti-retaliation provisions of the Rhode Island False Claims Act, R.I.G.L. §9-1.1-4(g), the federal False Claim Act, 31 U.S.C. § 3730(h) and common law.

### I. Parties

1. Plaintiff, Wayne Arruda (hereinafter "Plaintiff") is a resident of the Town of Somerset, Commonwealth of Massachusetts. Plaintiff was employed at Defendant RIMI from about September 1998 until his employment was terminated on September 5, 2018.

2. Defendant Rhode Island Medical Imaging, Inc. ("RIMI") is a corporation formed under the laws of the State of Rhode Island with a principal place of business located in East Providence, Rhode Island. Defendant RIMI operates as a professional medical practice providing diagnostic medical imaging services to patients at a number of facilities in the State of Rhode Island.

1

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 3 of 11 PageID #: 6

3. At all relevant times, Defendant Dr. John A. Pezullo, III (hereinafter "Defendant Pezzullo") has served and continues to serve as the President of RIMI and Plaintiff's immediate supervisor.

## II. Jurisdiction

4. The monetary amount claimed herein is sufficient to establish the jurisdiction of the Superior Court.

## III. Venue

5. Venue is proper in this Court in accordance with R.I.G.L. §9-4-3 insofar as the alleged unlawful employment practices occurred in the County of Providence, State of Rhode Island and Defendants are engaged in business in the County of Providence, State of Rhode Island.

## IV. Allegations Common to All Causes of Action

6. Mr. Arruda began his employment at RIMI in 1998 as a Controller.

7. In 2008, Mr. Arruda was promoted to Chief Financial Officer.

8. In 2011, Mr. Arruda was again promoted to Executive Director.

9. Throughout Mr. Arruda's employment at Defendant RIMI, his work performance was at least satisfactory if not better.

10. During all relevant times, Defendant RIMI has provided medical imaging to Medicaid and Medicare beneficiaries and has submitted claims for reimbursement to federal and state health care programs on their behalf. Fifty percent of Rhode Island's Medicaid is paid for by the Federal Government and fifty percent by the State of Rhode Island.

11. Medicare and Medicaid only pay for services that are "medically necessary" – i.e., Medicare requires as a condition of payment that services be "reasonable and necessary

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 4 of 11 PageID #: 7

for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A); R.I.G.L. §40-8-1 *et seq.*

12. Further, providers who wish to participate in the Medicare program must ensure that their services are provided "economically and only when, and to the extent, medically necessary." 42 U.S.C. §1320c-5(a)(l).

13. Under the Medicare and Medicaid programs, all diagnostic tests must be ordered by the physician who is treating the beneficiary. 42 C.F.R. § 410.32(a). Specifically, except in very limited circumstances, all procedures performed by RIMI must be ordered in writing by the physician who is treating the beneficiary. *Id.* § 410.33(d).

14. Tests not ordered by the beneficiary's treating physician are considered not reasonable and necessary and, therefore, not reimbursable. *Id.* § 410.32(a).

15. In or about late May 2018, Mr. Arruda was notified by Joanne Barbato, RIMI's Director of Patient Financial Services that RIMI received a complaint that it had billed a patient for radiological testing that was not ordered by the patient's treating physician.

16. Mr. Arruda notified the RIMI Board of Directors ("Board") of this patient's complaint. Mr. Arruda advised the Board that, as a result of this patient complaint, he intended to undertake an investigation.

17. In June and July 2018, Mr. Arruda undertook an extensive investigation. In doing so, Mr. Arruda compared the tests ordered by patients' physicians with the actual claims that RIMI submitted for reimbursement to the various health care programs, including claims submitted to Medicare and Medicaid. In conducting this investigation, Mr. Arruda reviewed approximately 100 claims that had been submitted to various health care programs for reimbursement, including Medicare and Medicaid, over the course of the previous six month period.

3

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 5 of 11 PageID #: 8

18. As a result of his investigation, Mr. Arruda discovered that RIMI was engaging in a pattern and practice of submitting claims for payment to various health care programs, including Medicare and Medicaid for tests that had not been ordered by the treating physician.

19. In particular, based on his investigation, Mr. Arruda discovered a pattern in which RIMI was submitting claims to health care programs, including Medicare and Medicaid for both pelvic and transvaginal ultrasound tests when only one of these two tests was ordered by the beneficiary's treating physician. Mr. Arruda also discovered that RIMI was submitting claims for abdominal and scrotal ultrasounds with Doppler when the physicians' orders had not requested that a Doppler ultrasound be performed. Mr. Arruda's investigation further revealed that RIMI was submitting claims for reimbursement for diagnostic mammograms without physicians' orders.

20. As part of his investigation, Mr. Arruda consulted with Panacea Healthcare Solutions, Inc. ("Consulting Firm"), a consulting firm that provides medical billing, auditing and compliance services, and the Consulting Firm confirmed that RIMI's billing practices were improper and in violation of Medicare and Medicaid rules and regulations.

21. Upon discovering that RIMI was billing for tests that were not ordered, Mr. Arruda undertook efforts to stop this unlawful practice, including instructing Siobhain Sullivan, RIMI's Director of Imaging Services, JoAnn Barbato, RIMI's Director of Patient Financial Services, and other RIMI staff to immediately stop the performance of and billing for tests that were not ordered by the beneficiary's treating physician. In addition, Mr. Arruda required that the RIMI clinical leadership team, the RIMI's clinical and reception staff and that RIMI's marketing team complete additional, formal training on proper and lawful healthcare billing practices. Mr. Arruda continued to notify RIMI's Board members, including Defendant

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 6 of 11 PageID #: 9

Pezzullo, that he was continuing to discover more and more false claims that had been submitted for payment.

22. Based on his initial review of the claims that had already been submitted for reimbursement, Mr. Arruda advised Mr. Pezzullo that the amount of false billing to Medicare and Medicaid was likely to be substantial and that RIMI needed to take action to return the overpayments.

23. In about June 2018, as his investigation into the extent of the false claims continued, Mr. Arruda discovered that RIMI was maintaining a list of certain physicians; that prior to performing a test, RIMI technicians were advised to consult the list. If an ultrasound had been ordered by a physician who was on the list, the technician was to automatically perform additional tests, beyond those that had been ordered by the physician.

24. Upon discovering this practice, Mr. Arruda contacted Ms. Sullivan who advised Mr. Arruda that she was aware of the list and that, in fact, she had authorized RIMI's technicians to engage in the conduct described in Paragraph 23 above. Mr. Arruda instructed Ms. Sullivan that this conduct violated Medicare and Medicaid rules and regulations, that it must stop immediately and to so advise the RIMI technicians.

25. Shortly thereafter, Mr. Arruda received a text message and a Facetime video call from Scott Levine, M.D. a RIMI shareholder and leader in the RIMI marketing department. Dr. Levine advised Mr. Arruda that, in fact, it was he who had directed Ms. Sullivan to instruct RIMI technicians to consult the list and to perform tests not ordered by physicians as set forth in Paragraph 23 above.

26. After Mr. Arruda undertook an investigation into false billing practices at RIMI and after he reported and tried to stop the false billing practices RIMI retaliated against Mr. Arruda. Defendant Pezzullo and RIMI Board members began excluding Mr. Arruda from

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 7 of 11 PageID #: 10

attending portions of Board meetings, portions which he had previously attended; Defendant Pezzullo began limiting his contact and communications with Mr. Arruda and Arruda was isolated and ignored.

27. On September 4, 2018, Defendant Pezzullo met with Mr. Arruda and informed him that Mr. Arruda was demoted; that he would no longer serve as RIMI's Executive Director and that the majority of Mr. Arruda's duties were to be reassigned to other RIMI staff, including to Ms. Sullivan. Defendant Pezzullo advised Mr. Arruda that his salary was being reduced, commensurate with the reduction in his duties, responsibilities and authority.

28. On September 5, 2018, Mr. Arruda tendered his resignation, effective September 28, 2018.

29. On September 5, 2018, Defendant Pezzullo advised Mr. Arruda that in fact, his employment was terminated, effective immediately and that Mr. Arruda was to immediately leave the premises of RIMI.

30. Shortly thereafter, on September 5, 2018, at a meeting, Defendant Pezzullo announced, "If Wayne thinks he is getting another job in Rhode Island he has another thing coming."

31. Following his termination of employment, Mr. Arruda sought to find new employment. For months, despite numerous interviews and despite being qualified for the positions to which he was applying, Mr. Arruda was not offered employment.

32. Among the positions to which he applied, Mr. Arruda applied for a position at Brown Emergency Medicine. After successfully completing a number of interviews, Mr. Arruda learned that he was a final candidate. He was asked to return to meet the staff who would be reporting to him. Following the meeting, Kirsten Rounds, Senior Vice President of Administration at Brown Emergency Medicine, advised Mr. Arruda that her boss had just spoken

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS Document 1-1 Filed 03/14/19 Page 8 of 11 PageID #: 11

to Defendant Pezzullo. When Mr. Arruda asked Ms. Rounds what Defendant Pezzullo had stated, Ms. Rounds responded, "Nothing good." Ms. Rounds made it clear to Mr. Arruda that due to Defendant Pezzullo's disparaging remarks about Mr. Arruda, Brown Emergency Medicine was no longer interested in extending an offer of employment to Mr. Arruda.

## V. Claims for Relief

33. Plaintiff incorporates the allegations contained in ¶¶1 through 32 above in the counts set forth below.

## Count One
## Violation of the False Claims Act, 31 U.S.C. §3730(h)

34. Mr. Arruda is an "employee" as the term is defined by the False Claims Act ("FCA").

35. Mr. Arruda engaged in protected conduct under the FCA by investigating and reporting matters that he reasonably believed could lead to a viable FCA action and by engaging in efforts to stop violations of the FCA.

36. Defendants RIMI and Pezzullo were on notice of Mr. Arruda's protected conduct.

37. Because Mr. Arruda engaged in protected conduct, Defendants RIMI and Pezzullo demoted and abruptly terminated his employment and otherwise retaliated against him, causing him to suffer damages.

38. Because Mr. Arruda engaged in protected conduct, Defendants RIMI and Pezzullo constructively discharged Mr. Arruda, causing him to suffer damages.

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 9 of 11 PageID #: 12

## Count Two
### Violations of the Rhode Island False Claims Act, R.I. G. L. § 9-1.1-4(g)

39. Plaintiff Arruda is an "employee" as the term is defined by the Rhode Island False Claims Act ("RIFCA").

40. Plaintiff Arruda engaged in protected conduct under the RIFCA by investigating and reporting matters that he reasonably believed could lead to a viable RIFCA action and by engaging in efforts to stop violations of the RIFCA.

41. Defendants RIMI and Pezzullo were on notice of Mr. Arruda's protected conduct.

42. Because Plaintiff Arruda engaged in protected conduct, Defendants RIMI and Pezzullo demoted and abruptly terminated his employment and otherwise retaliated against him, causing him to suffer damages.

43. Because Plaintiff Arruda engaged in protected conduct, Defendants RIMI and Pezzullo constructively discharged Plaintiff Arruda, causing him to suffer damages.

## Count Three
### Violation of Rhode Island Whistleblowers' Protection Act, R.I.G.L. §§ 28-50-1 et seq.

44. Defendant RIMI, by its acts and/or omissions, including but not limited to those described herein, violated the Rhode Island Whistleblowers' Protection Act insofar as Defendant RIMI discriminated against Plaintiff Arruda for opposing and reporting what he reasonably believed to be violations of law, rules, and/or regulations promulgated under federal and state law, causing him to suffer damages.

8

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 10 of 11 PageID #: 13

## Count Four
### Unlawful Invasion of the Rhode Island Privacy Act, R.I.G.L. §§ 9-1-28.1

45.  Said remarks by Defendants engendered publicity that unreasonably placed the Plaintiff in a false light before the public. As such, they constituted an invasion of Plaintiff's right to privacy and were highly offensive to a reasonable person.

46.  Defendants had knowledge of or acted in reckless disregard of the falsity of the publicized statements and the false light in which thy placed the Plaintiff.

47.  As a result of Defendants' conduct, Plaintiff Arruda has suffered great emotional distress, personal and professional humiliation and embarrassment, and substantial financial damages.

## Count Five
### Tortious Interference with Prospective Business Relations

48.  Defendants tortiously interfered with Plaintiff's prospective business relationships by inducing prospective employers not to hire Plaintiff;

49.  Defendants acted intentionally and with improper motive;

50.  As a result of Defendants tortious interference, plaintiff has suffered great emotional distress, personal and professional humiliation and substantial financial damages.

### VI. Prayers for Relief

**WHEREFORE**, Plaintiff prays for relief from this Honorable Court as follows:

a.   For two times the loss of salary and other valuable benefits;

b.   For additional economic losses and costs incurred by Plaintiff in establishing his claims against Defendants;

c.   Compensatory damages including, but not limited to, pain and suffering, emotional distress and reputational damage;

9

Case Number: PC-2019-1624
Filed in Providence/Bristol County Superior Court
Submitted: 2/20/2019 4:43 PM
Envelope: 1934772
Reviewer: Lynn G.

Case 1:19-cv-00133-JJM-PAS   Document 1-1   Filed 03/14/19   Page 11 of 11 PageID #: 14

d.    For reinstatement with full seniority or, in lieu thereof, full front pay and benefits for Plaintiff;

e.    For punitive damages in an amount sufficient to punish the Defendants and to deter future similar misconduct;

f.    For attorney's fees according to law;

g.    Any other such relief that the Court may deem just and equitable.

## VII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## VIII. Designation of Trial Counsel

Plaintiff hereby designates Louise A. Herman, Esquire, as trial counsel.

PLAINTIFF,
By his attorney,
HERMAN LAW GROUP

*/s/ Louise A. Herman*

---

Louise A. Herman, Esq. (#6430)
1445 Wampanoag Trail, Suite 104
E. Providence, RI 02915
(401) 277-4110
(401) 433-0139 (fax)
Email: lherman@lhermanlaw.com

Dated: February 20, 2019